317 P.3d 664

**STATE of Hawai'i, Petitioner/Plaintiff–Appellant,**

v.

**Marianne L. CODIAMAT, Respondent/Defendant–Appellee.**

**No. SCWC–11–0000540.**

Supreme Court of Hawai'i.

Dec. 27, 2013.

---

Brandon H. Ito, for petitioner.

James S. Tabe and Craig W. Jerome, for respondent.

RECKTENWALD, C.J., NAKAYAMA, and McKENNA, JJ., with ACOBA, J., dissenting, with whom POLLACK, J., joins.

Opinion of the Court by NAKAYAMA, J.

Petitioner/Plaintiff–Appellant State of Hawai'i (State) asks us to consider whether its complaint against Respondent/Defendant–Appellee Marianne L. Codiamat (Codiamat) provided sufficient notice to Codiamat of the charged offense to meet the constitutional requirements of due process. The State's complaint charged Codiamat with harassment, in violation of Hawai'i Revised Statutes (HRS) § 711–1106(1)(a) (Supp.2010).[1] Before the commencement of trial, the District Court of the First Circuit (district court)[2] granted Codiamat's motion to dismiss the State's complaint on the ground that it left the defendant unsure of what offense was charged because it was pleaded in the disjunctive using the conjunction "or."

On application for writ of certiorari to this court, the State argues: (1) that the Intermediate Court of Appeals (ICA) erred in affirming the dismissal because the State did not charge non-synonymous alternative means disjunctively; (2) that the ICA's dismissal is inconsistent with Hawai'i precedent allowing some use of the disjunctive in charging documents; and (3) that Hawai'i precedent limiting the use of disjunctive charging should be overturned.

We hold that the complaint in this case met due process requirements, regardless of whether one concludes that the disjunctively charged acts were synonymous or non-synonymous. Therefore, it is unnecessary for us to reach the question of whether the acts charged disjunctively were synonymous. The acts charged disjunctively were contained within a single subsection of a statute and were reasonably related so that the complaint sufficiently apprised the defendant of the nature of the charged acts and allowed the defendant to prepare a defense.

We vacate the judgment of the ICA affirming the district court's notice of entry of judgment and/or order and remand this case to the district court for further proceedings.

## I. BACKGROUND

On January 24, 2011, the State charged Codiamat with harassment in violation of HRS § 711–1106(1)(a).[3] The complaint stated:

1. On the date of the alleged incident, as it does now, HRS § 711–1106(1)(a) defined harassment as follows:

    (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
    (a) Strikes, shoves, kicks, or otherwise touches another person in an offensive man-

ner or subjects the other person to offensive physical contact[.]

2. The Honorable Clarence A. Pacarro presided.

3. The Dissent asserts that the State conceded that "only the '[s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner' portion of HRS § 711–1106(1)(a) will be

On or about the 6th day of January, 2011, in the City and County of Honolulu, State of Hawai'i, MARIANNE L. CODIAMAT, with intent to harass, annoy, or alarm [Complainant], did strike, shove, kick, or otherwise touch [Complainant] in an offensive manner <u>or</u> subject [Complainant] to offensive physical contact, thereby committing the offense of Harassment, in violation of Section 711–1106(1)(a) of the *Hawai'i Revised Statutes.*

(Emphasis added).

On June 15, 2011, at a pretrial hearing, Codiamat orally moved to dismiss the complaint based on *State v. McCarthy,* No. 29701, 124 Hawai'i 129, 2010 WL 3433722 (App. Aug. 31, 2010) (mem. op.),[4] arguing that the disjunctive wording in the complaint made it difficult to prepare a defense.[5] Over the State's objection, the district court granted Codiamat's motion and dismissed the complaint without prejudice.

On appeal to the ICA, the State argued that *McCarthy* only prohibits charging in the disjunctive when the acts, or the results of the acts, charged disjunctively are non-synonymous. It maintained that the acts described in Codiamat's complaint—"strike, shove, kick, or otherwise touch in an offensive manner or subject to offensive physical contact"—are simply multiple descriptions of "an offensive touching." The State reasoned that the disjunctive charging did not deprive Codiamat of fair notice because the disjunctive was only used to link synonymous words.

In her answering brief, Codiamat argued that the reasoning in *McCarthy* applied here to prohibit disjunctive charging. Specifically,

Codiamat argued that (1) strike, (2) shove, (3) kick, (4) otherwise touch in an offensive manner, and (5) subject to offensive physical contact each have a distinct meaning. Codiamat concluded that by charging these acts disjunctively, "[She] was not given proper notice of what she was actually being charged with doing."[6]

The ICA affirmed the district court's judgment, concluding that "[b]ecause the charge was pleaded in the disjunctive, it did not sufficiently apprise Codiamat of what she must be prepared to meet." *See State v. Codiamat,* No. CAAP–11–0000540, 128 Hawai'i 130, 2012 WL 3113898, at *1 (App. July 31, 2012) (SDO). The ICA first established that "touching another person in an offensive manner" is not synonymous with "subjecting the other person to offensive physical contact." *Id.* at *1–2. Relying upon its earlier holding in *State v. Pesentheiner,* 95 Hawai'i 290, 22 P.3d 86 (App.2001), the ICA clarified that " 'subject[ing] the other person to offensive physical contact' " has a separate meaning from offensive touching, namely, " 'contact with an item physically appurtenant to the body.' " *Id.* at *2 (quoting *Pesentheiner,* 95 Hawai'i at 294–95, 22 P.3d at 90–91). The ICA then cited *State v. Jendrusch,* 58 Haw. 279, 567 P.2d 1242 (1977), for the principal that " '[w]here a statute specifies several ways in which its violation may occur, the charge may be laid in the conjunctive but not in the disjunctive.' " *Id.* at *2–3 (quoting *Jendrusch,* 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4). The ICA therefore concluded that the disjunctive phrasing in the complaint constituted a fatal defect and held that the

tried in this case" and therefore "the reference to 'subjects the other person to offensive physical contact' in the charge ... has no relevance <u>at all</u> for pleading, trial, or appeal purposes." Dissenting Opinion at 228, 317 P.3d at 672 (emphasis in original). In its application for writ of certiorari, the State asserts that, "[it] is neither alleging nor proving that [Codiamat] committed the same offense in two entirely different ways, because the only act being charged here is an offensive touching of another person." However, the State's admission must be read in the context of its continuing assertion that "the charge's words of 'touch[ing Complainant] in an offensive manner' are factually synonymous with the words 'subject[ing Complainant] to offensive physical con-

tact.' " Although the State maintains that it is only charging the defendant with committing a single act, this act's nature and breadth are unclear.

4. *See infra* Part III. A. 1 (discussing *McCarthy* ).

5. Defense counsel stated that the State had recently filed amended complaints in the majority of its pending harassment cases to comply with *McCarthy* and that the State had not taken the opportunity to do so here.

6. Codiamat also alleges that the complaint lacked sufficient details regarding the factual allegations of the alleged incident.

district court did not err in dismissing the case without prejudice. *Id.* at \*3.

Chief Judge Nakamura filed a concurring opinion in which he argued that the *"Jendrusch* rule[7] cannot withstand rational scrutiny." *Id.* at \*4 (Nakamura, C.J., concurring). He contended that charging in the conjunctive provides no greater notice to the defendant than charging in the disjunctive, explaining that "[b]ecause the State can establish the harassment offense against Codiamat by proving either of the charged alternative means of committing the offense, charging her in the disjunctive clearly provided her with fair notice of the accusation and what she was required to meet." *Id.* at \*4. Chief Judge Nakamura opined that he believed this court should re-examine and overturn its precedent limiting the use of disjunctive pleading. *Id.* at \*5–6.

Codiamat timely filed an application for writ of certiorari on September 7, 2012. This court accepted Codiamat's application on October 22, 2012, and oral argument was heard on November 29, 2012.

## II. STANDARD OF REVIEW

### A. Sufficiency of a Complaint

■ The issue of whether a complaint provides sufficient notice to a defendant is reviewed under the *de novo,* or right/wrong, standard. *State v. Merino,* 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996).

## III. DISCUSSION

### A. The complaint was sufficient to meet the requirements of due process

■ Hawai'i takes a nontechnical approach to pleading standards. The Sixth

Amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution mandate that a "charge must be worded in a manner such that the nature and cause of the accusation could be understood by a person of common understanding." *State v. Sprattling,* 99 Hawai'i 312, 318, 55 P.3d 276, 282 (2002) (internal quotation marks and alterations omitted) (quoting *State v. Israel,* 78 Hawai'i 66, 71, 890 P.2d 303, 308 (1995)). The complaint must "inform[ ] the accused 'fully' of the nature and cause of the accusation against him or her, and sufficiently appris[e] the defendant of what he or she must be prepared to meet to defend against the charges." *State v. Nesmith,* 127 Hawai'i 48, 66, 276 P.3d 617, 635 (2012) (Acoba, J., concurring and dissenting).

### 1. Hawai'i precedent regarding disjunctive charging

Hawai'i courts have never enforced a strict rule against charging in the disjunctive. "The rule against disjunctive allegations has been modified and relaxed in Hawai'i in cases of offenses which are 'constituted of one or more of several acts or which may be committed by one or more of several means or with one or more of several intents or which may produce one or more of several results.' " *Territory v. Tamashiro,* 37 Haw. 552, 553 (1947) (quoting Revised Laws of Hawai'i (RLH) § 10804 (1945)).

In *Jendrusch,* the first modern case in which this court addressed the issue of disjunctive charging, the defendant was charged with disorderly conduct in violation of HRS § 711–1101(1).[8] 58 Haw. at 280, 567 P.2d at 1243. The complaint charged the defendant disjunctively with violating subsection (1)(b) or subsection (1)(c) of the statute.[9] *Jen-*

---

7. The term *"Jendrusch* rule" was first used by Chief Judge Nakamura in this concurring opinion. He noted that "[a]lthough the *Jendrusch* footnote is arguably dicta, it has been cited with approval in other cases by the Hawai'i Supreme Court." *Codiamat,* 2012 WL 3113898, at \*4 n. 1 (Nakamura, C.J., concurring).

8. At the time of the alleged incident, HRS § 711–1101 (Supp.1974) provided in pertinent part:
   "(1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or mem-

bers of the public, or recklessly creating a risk thereof, he:
   . . . .
   (b) Makes unreasonable noise; or
   (c) Makes any offensively coarse utterance, gesture, or display, or addresses abusive language to any person present, which is likely to provoke a violent response[.]"
*Jendrusch,* 58 Haw. at 280, 567 P.2d at 1243 (emphasis omitted) (quoting HRS § 711–1101).

9. The complaint read:

*drusch*, 58 Haw. at 280, 567 P.2d at 1243–44. The court held that the complaint was insufficient on other grounds.[10] *Id.* at 282, 567 P.2d at 1245. But, in dicta, the court stated:

> The type of conduct proscribed by subsection (1)(b) is not factually synonymous with that proscribed by subsection (1)(c). In charging the defendant in the disjunctive rather than in the conjunctive, it left the defendant uncertain as to which of the acts charged was being relied upon as the basis for the accusation against him. Where a statute specifies several ways in which its violation may occur, the charge may be laid in the conjunctive but not in the disjunctive.

*Id.* at 283 n. 4, 567 P.2d at 1245 n. 4 (citing *Territory v. Lii*, 39 Haw. 574 (1952)).

Later cases clarified permissible means of charging a defendant in the alternative. In an indictment for an offense that may be committed by a variety of acts, two or more of those acts may be charged in multiple counts or conjunctively in one count. *See State v. Lemalu*, 72 Haw. 130, 134, 809 P.2d 442, 444 (1991) (approving of charging in several counts); *see also Lii*, 39 Haw. at 578–79 (approving of charging conjunctively in one count). However, the preferred method for charging an offense that may be committed in more than one way is to charge in the conjunctive/disjunctive—alleging that the defendant committed the offense in one way and/or in another way. *State v. Batson*, 73 Haw. 236, 250, 831 P.2d 924, 932 (1992) (citing *State v. Cabral*, 8 Haw.App. 506, 510, 810 P.2d 672, 675 (1991)).

These later cases extrapolated a rule from *Jendrusch*: "[W]here a statute proscribes an offense that can be committed by factually alternative types of conduct, 'the charge may be laid [out] in the conjunctive but not in the disjunctive.'" *Batson*, 73 Haw. at 249–50, 831 P.2d at 932 (first brackets added, second brackets in original) (quoting *Lemalu*, 72 Haw. at 134, 809 P.2d at 444); *accord Jendrusch*, 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4. Though this court quoted the *Jendrusch* rule in *Batson* and Lemalu, we have never relied upon the rule in reaching the holding of a case.

The ICA previously construed the *Jendrusch* rule narrowly, to forbid disjunctive charging only where a defendant is charged with committing an offense under multiple sections of a statute. *See State v. Freitas*, No. 28430, 123 Hawai'i 313, 2010 WL 2862051, at *3 (App. July 22, 2010) (SDO) ("*Jendrusch* is inapposite because [defendant] was not charged with engaging in conduct proscribed by different sections of [the statute]...."). The ICA's decision in *McCarthy* represented a departure from its earlier interpretation of the *Jendrusch* rule.

McCarthy was convicted of harassment in violation of HRS § 711–1106(1)(b).[11] *McCarthy*, 2010 WL 3433722, at *1. On appeal, McCarthy alleged that the trial court erred in denying his motion to dismiss the complaint for lack of specificity. *Id.* at *1–2. McCarthy's complaint read:

> On or about the 4th day of October, 2006, in the City and County of Honolulu, State of Hawai'i, KIRK McCARTHY, with intent to harass, annoy, <u>or</u> alarm SCOTT AKAU, did insult, taunt, <u>or</u> challenge SCOTT

---

> You [Jendrusch] are hereby charged that in the City and County of Honolulu, State of Hawai'i, on or about the 14th day of September, 1974, with intent to cause public inconvenience, annoyance or alarm by members of the public or recklessly creating a risk thereof, you did make unreasonable noise or offensively coarse utterance, gesture or display or address abusive language to any person present, thereby committing the offense of Disorderly Conduct....

*Id.* at 280, 567 P.2d at 1243–44 (emphasis omitted; brackets in original).

**10.** The court held that the complaint failed to charge an offense because it was drawn from an outdated version of the statute and did not ac-

count for subsequent amendments. *Jendrusch*, 58 Haw. at 283, 567 P.2d at 1245.

**11.** HRS § 711–1106(1)(b) (Supp.2005) provided then, as it does now:

> (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm another person, that person:
> 
> ....
> 
> (b) Insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response or that would cause the other person to reasonably believe that the actor intends to cause bodily injury to the recipient or another, or damage to the property of the recipient or another[.]

AKAU in a manner likely to provoke an immediate violent response <u>or</u> that would cause SCOTT AKAU to reasonably believe that KIRK McCARTHY intended to cause bodily injury to him <u>or</u> another <u>or</u> damage to the property of SCOTT AKAU <u>or</u> another . . . .

*Id.* at *1 (emphasis added). Relying upon the *Jendrusch* rule and federal pleading standards, the ICA held that "[t]he complaint is insufficient because it charges <u>the results of the conduct</u> in the disjunctive ('or'), rather than in the conjunctive ('and')." *Id.* at *2 (emphasis added). The court noted that by charging two non-synonymous results disjunctively—provoking a violent response <u>or</u> causing fear of injury—the defendant was left uncertain as to which acts were alleged. *Id.* at *3. The court also recommended using the conjunctive/disjunctive ("and/or") construction established in *Batson.*[12]  *Id.* at *4.

Despite the ICA's apparent assertion that disjunctive charging of non-synonymous acts violates due process, the court itself was doubtful of this conclusion. In the final footnote of *McCarthy,* the ICA stated: "The case law notwithstanding, it is not clear to us that phrasing the charge in the conjunctive provides any additional notice over a charge phrased in the disjunctive." *Id.* at *4 n. 4.

### 2. Applying Hawai'i precedent to the complaint here

The ICA relied upon *Jendrusch* to conclude that because the complaint against Codiamat charged two forms of nonsynonymous conduct disjunctively, the charge did not provide the defendant with adequate notice. *See Codiamat,* 2012 WL 3113898, at *1–2. As discussed above, the *Jendrusch* rule suggests that complaints charging non-synonymous acts disjunctively may not provide adequate notice. However, a closer examination of *Jendrusch* demonstrates that not all uses of the disjunctive, even when joining non-synonymous acts, constitute a fatal flaw.

*Jendrusch* involved a charge of disorderly conduct under HRS § 711–1101(1), subsections (b) and (c).[13]  *Jendrusch,* 58 Haw. at 280, 567 P.2d at 1243. The disorderly conduct codified in subsection (b) is: "unreasonable noise." HRS § 711–1101(1)(b). The disorderly conduct codified in subsection (c) is, generally, rude conduct: "offensively coarse utterance[s], gesture[s], or display[s], or . . . abusive language . . . likely to provoke a violent response." HRS § 711–1101(1)(c). Notably, the acts of subsection (c) were charged disjunctively as they appear in the statute—"mak[ing] offensively coarse utterance, gesture, <u>or</u> display, <u>or</u> address[ing] abusive language to any person present." *Jendrusch,* 58 Haw. at 280, 567 P.2d at 1243–44 (emphasis added). The *Jendrusch* court expressed no concern as to charging these non-synonymous acts disjunctively. The court stated only that charging subsection (b) and subsection (c) disjunctively deprived the defendant of notice.[14]  *Id.* at 283, 567 P.2d at 1245.

In this case, the State charged Codiamat under a single subsection of the harassment statute, HRS § 711–1106(1)(a). The ICA construed the language of HRS § 711–1106(1)(a) as constituting two distinct forms of conduct: direct offensive touching and indirect offensive contact. But, whether Codiamat was charged with direct offensive

---

**12.** Based on the ICA's use of capital letters to emphasize certain uses of "or," it appears that the ICA recommended amending the complaint to read:

On or about the 4th day of October, 2006, in the City and County of Honolulu, State of Hawai'i, KIRK McCARTHY, with intent to harass, annoy, or alarm SCOTT AKAU, did insult, taunt, or challenge SCOTT AKAU in a manner likely to provoke an immediate violent response [and/]or that would cause SCOTT AKAU to reasonably believe that KIRK McCARTHY intended to cause bodily injury to him [and/]or another [and/]or damage to the property of SCOTT AKAU [and/]or another. . . .

*McCarthy,* 2010 WL 3433722, at *1–3. But, the ICA also criticized the "[u]se of the disjunctive to combine multiple forms of <u>conduct.</u>" *Id.* at *3 (emphasis added). It is therefore unclear why the ICA did not, or if it perhaps did, recommend charging the conduct in the conjunctive/disjunctive as well: insult, taunt, <u>and/or</u> challenge.

**13.** *See supra* note 10.

**14.** From the text of Jendrusch, it is unclear if the use of the disjunctive was impermissible because it joined acts from two different subsections of the statute, or if it was impermissible because it joined two different categories of behavior.

touching or indirect offensive contact is relatively inconsequential because the actions are closely related, falling within the same category of behavior. Because Codiamat was charged with violating only one subsection of the statute, codifying a single category of harassing behavior, the complaint does not violate the *Jendrusch* rule.

### B. Hawai'i's disjunctive charging rule strikes the appropriate balance between ease of administration and protection of defendants' rights

The State argues that Hawai'i precedent limiting the use of disjunctive in charging documents should be reexamined and overturned. The State adopts Chief Judge Nakamura's reasoning from his concurring opinion and argues for "a reasonable approach." The State's argument relies upon the principle that Hawai'i's courts "interpret a charge as a whole, employing practical considerations and common sense." *Sprattling*, 99 Hawai'i at 318, 55 P.3d at 282.

The State encourages us to adopt Alaska's approach for determining the sufficiency of a charge. In *Christian v. State*, 513 P.2d 664 (Alaska 1973), the Alaska Supreme Court determined that a complaint provided sufficient notice when it charged the defendant with "mak[ing] false statements, conceal[ing] material facts or otherwise commit[ting] fraud in application for registration of a vehicle." 513 P.2d at 667 (emphasis added). The *Christian* court explained that "under modern principles of criminal procedure an indictment should not be construed hypertechnically in an effort to find fatal flaws when, by a reasonable approach, it can be read as fulfilling the basic criteria of sufficiency." *Id.* It reasoned that the charge provided fair notice to the defendant where it "named the defendant, gave the date and place of the offense, stated the essential elements of the offense, cited the precise number of the cer-

tificate of title, and named several methods by which the offense was perpetrated." *Id.*

Codiamat disagrees, arguing that disjunctive pleading does not provide adequate notice to the defendant. She claims that the disjunctively worded complaint left her unsure of how to prepare a defense.[15] Codiamat takes issue with Chief Judge Nakamura's conclusion that charging in the conjunctive is misleading because it suggests that the State must prove both means charged while in actuality proof of either means will suffice. Codiamat maintains that charging in the conjunctive provides notice to the defendant that he or she is accused of committing the offense by each means charged. At oral argument, Codiamat also suggested that the most important aspect of notice is informing the defendant of the nature of the charge, and that informing the defendant of what is necessary to prepare a defense is secondary.

We disagree with Codiamat's weighing of the dual purposes of notice. It is equally important that the defendant first, understand the acts with which he or she is charged and second, be provided with sufficient information to prepare a defense. We agree, in part, with Chief Judge Nakamura: the use of the disjunctive may be appropriate when it provides notice to the defendant that the State may attempt to prove guilt by showing that the defendant committed any one of multiple related acts. This alerts the defendant that he or she must be prepared to defend against each of the charged alternatives. However, the disjunctive may not provide adequate notice to the defendant when used to join charges of violations of multiple sections or subsections of a statute. In these instances, the use of the disjunctive may confuse the defendant as to the number of disparate acts with which he or she is

---

**15.** In its reply to Codiamat's response, the State contends that the procedural history of the case demonstrates that Codiamat was not hindered in preparing her defense. The State notes that at the first trial setting for this case, Codiamat "objected to the State's request for a continuance ostensibly because she was ready to proceed to trial." This theorizing is irrelevant. The stan-

dard for evaluating the sufficiency of a complaint challenged before trial is "whether the nature and cause of the accusation could be understood by a person of common understanding," not whether the defendant understood the accusation. *Sprattling*, 99 Hawai'i at 318, 55 P.3d at 282 (brackets omitted; emphasis added).

charged. This conclusion is supported by our precedent.

■ As discussed above, the disjunctive charging rule in Hawai'i has evolved over time. The earliest Hawai'i precedent provided that analogous terms, or terms used merely for illustrative purposes, could be charged disjunctively, but that all other uses of the disjunctive were impermissible. *Territory v. Kim Ung Pil*, 26 Haw. 725, 726 (Haw.Terr.1923). By 1947, the rule came to allow some disjunctive charging of acts, means, intents, and results. *See Tamashiro*, 37 Haw. at 553. If dicta from *Jendrusch* is interpreted as precedent, then charges brought under separate sections or subsections of a statute may not be worded disjunctively. *Jendrusch*, 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4. However, states of mind may be charged disjunctively. *See, e.g., Batson*, 73 Haw. at 248, 831 P.2d at 931 (charging defendant "intentionally or knowingly"); *Jendrusch*, 58 Haw. at 280, 567 P.2d at 1243 (charging defendant with "intent to cause public inconvenience, annoyance or alarm by members of the public or recklessly creating a risk thereof"). Furthermore, acts may be charged disjunctively when the words used charge similar or analogous forms of conduct that are codified in a single subsection of a statute. *See, e.g., Nesmith*, 127 Hawai'i at 51, 276 P.3d at 620 (charging defendant with "operat[ing] or assum[ing] actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol"); *Jendrusch*, 58 Haw. at 280, 567 P.2d at 1243–44 (charging defendant with "mak[ing] offensively coarse utterance, gesture, or display, or address[ing] abusive language to any person present").

These principles strike a balance between a more common sense, less technical, approach to charging while still protecting defendants' rights to notice and due process.

**16.** This holding does not disturb our earlier precedent that when charging an offense that may be committed in more than one way, the State may charge in separate counts, in the conjunctive, or, preferably, in the conjunctive/disjunctive. *See Batson*, 73 Haw. at 250, 831 P.2d at 932; *Lemalu*, 72 Haw. at 134, 809 P.2d at 444; *Lii*, 39 Haw. at 578–79. Furthermore, while the State may charge in the alternative, the State may not charge a defendant with any offense, or any

## IV. CONCLUSION

■ We hold that when charging a defendant under a single subsection of a statute, the charge may be worded disjunctively in the language of the statute as long as the acts charged are reasonably related so that the charge provides sufficient notice to the defendant.[16] We therefore vacate the ICA's August 30, 2012 judgment affirming the district court's June 15, 2011 notice of entry of judgment and/or order and remand to the district court for further proceedings.

Dissenting Opinion by ACOBA, J., with whom POLLACK, J., Joins.

The following charge using the disjunctive, "or", was leveled against Respondent/Defendant–Appellee Marianne L. Codiamat (Codiamat):

> On or about the 6th day of January, 2011, in the City and County of Honolulu, State of Hawai'i, [ ] CODIAMAT, with intent to harass, annoy, or alarm [complainant], did strike, shove, kick, or otherwise touch [complainant] in an offensive manner or subject [complainant] to offensive physical contact, thereby committing the offense of Harassment, in violation of Section 711–1106(1)(a) of the Hawai'i Revised Statutes [ (HRS) ].

(Emphasis added.) At the time this case was filed, it followed from *State v. Jendrusch*, 58 Haw. 279, 567 P.2d 1242 (1977), and *State v. Pesentheiner*, 95 Hawai'i 290, 22 P.3d 86 (App.2001), that Petitioner/Plaintiff–Appellant the State of Hawai'i (State) was required to file the charge in the instant case in the conjunctive or the conjunctive/disjunctive, and not solely in the disjunctive. *See State v. Batson*, 73 Haw. 236, 250, 831 P.2d 924, 932 (1992) ("We agree with the ICA that 'the

alternative, that is not supported by probable cause. *See* Hawai'i Rules of Professional Conduct (HRPC) Rule 3.8(a) (1994) ("A public prosecutor or other government lawyer shall … not institute or cause to be instituted criminal charges when [the prosecutor or government lawyer] knows or it is obvious that the charges are not supported by probable cause …." (brackets in original))

most appropriate method to allege one offense committed in two different ways is to allege in one count that the defendant committed the offense (a) in one way 'and/or' (b) in a second way.' " (quoting *State v. Cabral,* 8 Haw.App. 506, 510, 810 P.2d 672, 675 (1991))).

Despite its use of the term "or" in this case, the State has conceded that it will only prosecute Codiamat on that part of the charge alleging she "did strike, shove, kick, or otherwise touch [complainant] in an offensive manner[,]" but *not* on the second part of the charge alleging that Codiamat "subject[ed] [complainant] to offensive physical contact[.]" *See* HRS § 711–1106(1)(a) (Supp.2010)[1]. Had the State simply pleaded what it admits Codiamat will be tried for, this appeal would not arise. Nevertheless, the majority proceeds to decide that the dual accusation against Codiamat of "touch[ing]" "or" "subject[ing] [complainant] to offensive physical contact" is valid, even though Codiamat will not be tried on the second accusation. The majority's discussion of the sufficiency of the charging document thus is "advisory," and, respectfully, clashes with the "prohibition against rendering advisory opinions." *Trustees of Office of Hawai'ian Affairs v. Yamasaki,* 69 Haw. 154, 171, 737 P.2d 446, 456 (1987) (internal quotation marks and citation omitted).

However, because the majority's opinion will have an effect on future cases, the merits of this case must be discussed even though lacking in an actual controversy. In that regard, and consistent with our precedent, I would hold that the use of the disjunctive "or" failed to provide notice of the conduct for which Codiamat was charged, and that the conjunctive "and" or "and/or" must be used in order to afford Codiamat both due process, pursuant to the Hawai'i Constitution article I, section 5, and notice of "the nature and cause of the accusation" against her, pursuant to the article I, section 14 of the Hawai'i Constitution. Therefore, I respectfully dissent.

## I.

First and as stated previously, the State acknowledged, at trial, on appeal to the Intermediate Court of Appeals (ICA)[2], and in its arguments to this court, that only the "[s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner" portion of HRS § 711–1106(1)(a) will be tried in this case.[3] Accordingly, the reference to the clause "subjects the other person to offensive physical contact" in the charge and in the context of HRS § 711–1106(1)(a) has no relevance at all for pleading, trial, or appeal purposes. *See* HRS § 711–1106(1)(a).

Indeed, as the district court of the first circuit (the court)[4] observed below, although the State failed to amend the complaint in this case, it has filed complaints converting the "or" to "and/or" in similar harassment cases involving the very same statute at issue here. By appealing the court's ruling, the State argues the viability of charging language that it has already admitted is meaningless in this case. Thus, any discussion of "or," "and," or "and/or" is irrelevant in the context of this appeal, because there is, as the State admits, no actual controversy as to whether the State must prove that the of-

---

1. HRS § 711–1106(1)(a) provides that:
   (1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:
   (a) Strikes, shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]
   (Emphasis added.)

2. *See State v. Codiamat,* No. CAAP–11–0000540, 2012 WL 3113898, at *1 (App. July 21, 2012) (SDO). The Summary Disposition Order was filed by Associate Judges Katherine G. Leonard and Lisa M. Ginoza, with Chief Judge Craig H. Nakamura concurring.

3. In the State's opening brief to the ICA, it stated, "the only act being charged here is, essentially, an offensive touching." (internal quotation marks omitted) (brackets omitted). At oral argument before this court, the State admitted that it could have charged Codiamat using only the language in the first clause of HRS § 711–1106(1)(a). *See* Oral Argument at 7:00–7:30, *State v. Codiamat,* No. SCWC–11–0000540, *available at* http://state.hi.us/jud/oa/12/SCOA_112912_11_540.mp3.

4. The Honorable Clarence A. Pacarro presided.

fense of harassment was committed in either or both of two alternative ways.

In effect, the majority's opinion will have no legal or practical import in this case as to the effect of the "subject[ ]" clause. But,

> the duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.

*Kapuwai v. City & Cnty. of Honolulu, Dep't of Parks & Recreation,* 121 Hawai'i 33, 46, 211 P.3d 750, 762 (2009) (quoting *Wong v. Bd. of Regents,* 62 Haw. 391, 394–95, 616 P.2d 201, 204 (1980)) (emphasis omitted) (brackets omitted). Opining on a charging instrument's sufficiency therefore should await "cases in which ... [the question] must actually be decided." *State v. Fitzwater,* 122 Hawai'i 354, 378, 227 P.3d 520, 544 (2010) (Acoba, J., dissenting). In the instant case, we are thus "without the benefit of a concrete controversy to validate [this] opinion." *Id.* at 381, 227 P.3d at 547 (citation omitted). Consequently, there is no reason to proceed further. This court should dismiss this application. *See* HRS § 602–59(b) (Supp.2006) (stating grounds for acceptance of certiorari); *State v. Tuua,* 125 Hawai'i 10, 13, 250 P.3d 273, 276 (2011).

## II.

Charging in the disjunctive, "or," is not permitted, because the types of conduct proscribed in HRS § 711–1106(1)(a) are not synonymous. In *Jendrusch,* the complaint was "drawn in the language of the statute", which this court held was generally sufficient, so long as "the statute sets forth with reasonable clarity all essential elements of the crime intended to be punished, and fully defines the offense in unmistakable terms readily comprehensible to persons of common understanding[.]" 58 Haw. at 282, 567 P.2d at 1245. *Jendrusch* held that the complaint was insufficient inasmuch the language

of the charge was based on an outdated version of the statute, *id.,* but this court also noted that where there are several ways to commit an offense, the charge must not set out those ways in the disjunctive:

> To further compound the problem, the draftsman in this case elected to charge the defendant in statutory language in one count. The type of conduct proscribed by subsection (1)(b) is not factually synonymous with that proscribed by subsection (1)©. In charging the defendant in the disjunctive rather than in the conjunctive, it left the defendant uncertain as to which of the acts charged was being relied upon as the basis for the accusation against him. Where a statute specifies several ways in which its violation may occur, the charge may be laid in the conjunctive but not in the disjunctive.

*Id.* at 283 n. 4, 567 P.2d at 1245 n. 4 (citing *Territory v. Lii,* 39 Haw. 574 (Haw. Terr.1952)) (emphasis added).

This precept has become a foundation of the charging process. *See Batson,* 73 Haw. at 249–50, 831 P.2d 924, 932 (1992) (citing with approval the proposition that where a statute proscribes an offense that can be committed by factually alternative conduct, the charge may be in the conjunctive but not in the disjunctive); *State v. Lemalu,* 72 Haw. 130, 134, 809 P.2d 442, 444 (1991) ("[W]hen the type of conduct proscribed under one subsection of the statute is not factually synonymous with that proscribed by another subsection, we have previously noted that the charge 'may be laid in the conjunctive but not in the disjunctive'") (quoting *Jendrusch,* 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4), *overruled on other grounds by State v. Spearman,* 129 Hawai'i 146, 151, 296 P.3d 359, 364 (2013); *Cabral,* 8 Haw.App. at 510, 810 P.2d at 675 ("In our view, the most appropriate method to allege one offense committed in two different ways is to allege in one count that the defense committed the offense (a) in one way 'and/or' (b) in a second way."); *see also State v. McCarthy,* No. 29701, 124 Hawai'i 129, 2010 WL 3433722, at *2 (App. Aug. 31, 2010) (mem. op.) [5] ("The

---

**5.** *McCarthy* is an unpublished ICA memorandum opinion in which the defendant was charged

with HRS § 711–1106(1)(b). 2010 WL 3433722, at *1. HRS § 711–1106(1)(b) provides:

complaint is insufficient because it charges the results of the conduct in the disjunctive ('or'), rather than in the conjunctive ('and').". Thus, a charge drawn in the language of the statute is defective if non-synonymous means of committing the same conduct are charged in the disjunctive. *Jendrusch*, 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4.

### III.

#### A.

Based on their plain language, the two clauses in HRS § 711–1106(1)(a), one having to do with "touch[ing]" and the other with "subject[ing]," describe dissimilar conduct. *See State v. Gomes*, 117 Hawai'i 218, 228, 177 P.3d 928, 939 (2008) (" '[W]here the language of the law in question is plain and unambiguous,' courts are obligated to 'give effect to the law according to its plain and obvious meaning.' ") (quoting *Mikelson v. United Servs. Auto. Ass'n*, 108 Hawai'i 358, 360, 120 P.3d 257, 259 (2005)). In interpreting statutes, HRS § 1–14 (1993) provides that "[t]he words of the law are generally to be understood in their <u>most known and usual signification,</u> without attending so much to the literal and strictly grammatical construction of the words as to their <u>general or popular use or meaning.</u>" HRS § 1–14 (emphases added); *see Keliipuleole v. Wilson*, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997) ("Words are given their common meaning unless some wording in the statue requires a different interpretation." (internal quotation

marks and citations omitted)). Moreover, this court " 'may resort to legal or other well accepted dictionaries as one way to determine the <u>ordinary meaning</u> of certain terms not statutorily defined.' " *State v. Pali*, 129 Hawai'i 363, 370, 300 P.3d 1022, 1029 (2013) (emphasis added) (quoting *State v. Kikuta*, 125 Hawai'i 78, 96, 253 P.3d 639, 658 (2011) (internal quotation marks and citation omitted)).

Here, the first clause of HRS § 711–1106(1)(a), "[s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner" describes a category of conduct obviously relating to touching. The use of the phrase "or otherwise," indicates that "[s]trikes, shoves, [and] kicks" are acts of touching another person in an offensive manner. "Otherwise" is defined as, *inter alia,* "in a different way or manner[,]" "in different circumstances" and "in other respects." *Merriam Webster's Collegiate Dictionary* 823 (10th ed. 1993); *see Kikuta*, 125 Hawai'i at 96, 253 P.3d at 658 (the use of dictionaries is "one way to determine the ordinary meaning of certain terms . . . ."). Thus, "[s]trikes, shoves, [and] kicks," are different ways of "touching another person in an offensive manner."

This construction is also supported by the interpretive canon of ejusdem generis, which holds that "when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only

---

(1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm any other person, that person:

. . .

(b) Insults, taunts, or challenges another person in a manner likely to provoke an immediate violent response or that would cause the other person to reasonably believe that the actor intends to cause bodily injury to the recipient or another or damage to the property of the recipient or another[.]

The complaint that was challenged in *McCarthy* stated:

On or about the 4th day of October, 2006, in the City and County of Honolulu, State of Hawai'i, [the defendant], with intent to harass, annoy, or alarm [complainant], did insult, taunt, or challenge [complainant] in a manner likely to provoke an immediate violent response <u>or</u> that would cause [complainant] to reasonably believe that [the defendant] intend-

ed to cause bodily injury to him or another <u>or</u> damage to the property of [complainant] or another, thereby committing the offense of Harassment in violation of Section 711–1106(1)(b) of the [HRS].

*Id.* (emphases added). The defendant argued that the complaint was insufficient because it charged the results of the conduct element in the disjunctive ("or") rather than in the conjunctive ("and"). *Id.* at *2. The ICA, citing this court's precedent in *Lemalu* and *Jendrusch*, held that " '[p]hrasing a complaint in the disjunctive would not provide sufficient notice as it would leave the defendant uncertain as to which of the acts charged was being relied upon [as the basis for the] accusation against him[,]' " and thus, the charge against the defendant was improperly pled in the disjunctive. *Id.* at *4 (quoting *Lemalu*, 72 Haw. at 134, 809 P.2d at 444 (internal quotation marks and citation omitted)).

items of the same type as those listed." *Black's Law Dictionary* 556 (8th ed. 1999); *see Singleton v. Liquor Comm'n,* 111 Hawai'i 234, 243 n. 14, 140 P.3d 1014, 1023 n. 14 (2006). Hence, in HRS § 711–1106(1)(a), "[s]trikes, shoves, [and] kicks," is the list of specifics, and as such, the general phrase "or otherwise touches another person in an offensive manner" is limited to actions like that of the preceding enumerated acts, such as "strike[ ], shove[ ], [or] kick[ ][.]"

Because the scope of "otherwise touches another person in an offensive manner" is delineated by conduct such as "strikes, shoves, [or] kicks[,]" an ordinary reading of the term "touches" would be understood to mean personal bodily contact. The definition of "touch" as a verb, includes, *inter alia,* "to put hands upon in any way or degree; esp[ecially] to commit violence upon[,]" and "to cause to be briefly in contact or conjunction with something." *Merriam Webster's Collegiate Dictionary* 1247. Under the statute, therefore, the first clause would connote personal bodily contact between the complainant and defendant.

On the other hand, "subjects the other person to offensive physical contact" denotes contact of a physical nature that would not necessarily involve personal bodily contact. "Subject" is defined, *inter alia,* as "to cause or force to undergo or endure (something unpleasant inconvenient, or trying)." *Merriam Webster's Collegiate Dictionary* 1172. Plainly, personal bodily touching of a person is not required in order to cause or force another person to endure offensive contact.

That these two categories of means are not synonymous is also manifested by the word "or" which separates them. "Or" is defined, *inter alia,* as "a function word to indicate an alternative[.]" *Merriam Webster's Collegiate Dictionary* 817. In *State v. Kalani,* 108 Hawai'i 279, 118 P.3d 1222 (2005), this court held that "or" " 'usually connects words or

phrases of different meanings permitting a choice of either.' " 108 Hawai'i at 284, 118 P.3d at 1227 (quoting *State v. Sorenson,* 44 Haw. 601, 604, 359 P.2d 289, 291 (1961)). Hence, the word "or" between the two clauses means that the conduct described is not the same, because, as commonly understood, "or" indicates that the first and second categories of means "connects words or phrases of different meanings. . . ." *Id.* Thus, a lay person would understand that "or" meant "touches" to involve acts unlike those in the category of "subject[ing] the other person to offensive contact" <u>because</u> the two clauses are separated by the term "or"[6] and "[t]he words of a law are generally to be understood in their most known and usual signification[.]" HRS § 1–14.

Furthermore, the statute must be construed as a whole, and doing so reinforces the legislature's evident intent that the clauses be applied as pertaining to different types of conduct, rather than the same conduct, i.e., personal bodily contact. *Cf. State v. Kamana'o,* 118 Hawai'i 210, 218, 188 P.3d 724, 732 (2008) (" '[L]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another.' ") (quoting HRS § 1–16 (1993)). Construing the first and second clauses with reference to each other indicates that the second clause describes offensive contact that is other than personal bodily contact between the complainant and the defendant, as described in the first clause. The "subject[ ]" category is thus not synonymous with the "touches" category of acts.

If the clauses were synonymous, the "subject[ ]" category would be rendered surplusage. It must be presumed that the legislature intended all of the words in a statute to be given effect and that the words were enacted for a purpose.[7] *See Dejetley v.*

6. HRS § 1–18 (1993), dealing with construction of 6 laws, states that "[e]ach of the terms 'or' and 'and', has the meaning of the other or both." This would not be apparent to a defendant, however, from the face of a charging instrument, and thus the ordinary meaning of "or" rather than its construction under HRS § 1–18, applies. *See Sorenson,* 44 Haw. at 604, 359 P.2d at 291 ("Al-

though it is true that under proper circumstances 'or' may mean 'and', the common usage of the word 'or' is as a disjunctive, indicating an alternative.").

7. If the two clauses in HRS § 711–1106(1)(a) are synonyms, then the statute would include surplusage as to all or part of the second clause. In

*Kahoʻohalahala,* 122 Hawaiʻi 251, 263, 226 P.3d 421, 433 (2010) ("[c]ourts are bound to give effect to all parts of a statute, and ... no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute.") (internal quotation marks and citations omitted).

Reading out of existence the phrase "subjects the other person to offensive physical contact" by treating it as "synonymous" with "[s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner" would encroach on the clear legislative objective to define conduct differently. *See State v. Wells,* 78 Hawaiʻi 373, 376, 894 P.2d 70, 73 (1995) ("[O]ur foremost obligation is to ascertain and give effect to the intention of the legislature.") (internal quotation marks and citation omitted). If every term in the statute were synonymous, as the majority suggests, no reason would exist to list the actions in the first category, such as "[s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner[,]" because all such conduct would be subsumed under the umbrella phrase "subjects the other person to offensive physical contact."

The majority's construction is contrary to reading the statute as a whole and assumes the legislature meant to enact meaningless words—a violation of the fundamental principle that "[d]ue respect must be accorded the effect of words used by the legislature[.]" *State v. Kalama,* 94 Hawaiʻi 60, 65, 8 P.3d 1224, 1229 (2000) (citation omitted). It is only by giving full accord to each phrase in the statute that the legislature's intent in

enacting HRS § 711–1106(1)(a) can be effectuated.

### B.

*Pesentheiner* reached the same conclusion, when the ICA was faced with the question of whether the act of knocking off a police officer's hat constituted "touch[ing] another person in an offensive manner or subject[ing] the other person to offensive physical contact" pursuant to HRS § 711–1106(1)(a).[8] 95 Hawaiʻi at 295, 22 P.3d at 91.

In its analysis, the ICA first set out the plain language of the statute into two categories. The first was "[s]trikes, shoves, kicks, or otherwise touches another person in an offensive manner." *Id.* The second was "subjects the other person to offensive physical contact." *Id.* The State argued that the conduct at issue fell within the first category, but the ICA held that "[s]uch a construction would be contrary to the commonsense understanding imparted by the statute's choice of words." *Id.* With respect to the second category of conduct, the ICA concluded that "offensive physical contact" must constitute more than simply the "touch[ing] [of] another person in an offensive manner" if the phrase in the disjunctive is to hold any independent meaning or effect. *Id.* at 95, 22 P.3d at 91 (emphasis added).

Hence, in *Pesentheiner,* the ICA recognized the difference between the two clauses in terms of the conduct described by each, giving effect to the language of the statute in its entirety. *Id.* at 295, 22 P.3d at 91. It stated, "[w]e believe that 'offensive physical contact' describes the conduct in question here [of knocking off a police officer's hat],

---

this case, the State pled a violation of the second part, but admits that it was surplusage. The State nevertheless asserts that "the presence of surplusage does not render the charge 'fatally defective.'" In support, the State cites to Hawaiʻi Rules of Penal Procedure (HRPP) Rule 7(e), which states that "[t]he court, on motion or agreement of the defendant, may strike surplusage from the charge." However, this proposition violates the "cardinal rule of statutory construction[,]" *State v. Kaakimaka,* 84 Hawaiʻi 280, 289–90, 933 P.2d 617, 626–27 (1997), as noted above, requiring that courts "give effect to all parts of a statute[.]" *Id.; Dejetley,* 122 Hawaiʻi at 263, 226 P.3d at 433.

8. The State alleges that *Pesentheiner* is inapplicable because in that case, the court engaged in statutory interpretation of HRS § 711–1106(1)(a), rather than considering how a person of common understanding would view the words in the statute. However, as discussed *infra,* in this instance, the statutory interpretation of the statute that would give effect to the legislature's intent is consistent with how a person of common understanding would view the charge in the instant case.

offensive contact that, <u>while separate and apart from the various forms of actual bodily touching,</u> nevertheless involves contact with an item physically appurtenant to the body." *Id.* (emphasis added).

Notably, the State had originally argued that the defendant's conduct was a "strike[ ]" within the meaning of the first category of conduct, *id.* at 294, 22 P.3d at 90, but the ICA held that, construing the statute as a whole, the defendant's conduct fell within the second category of conduct, which "while <u>separate and apart from the various forms of actual bodily touching,</u> nevertheless involves contact with an item physically appurtenant to the body." *Id.* at 296, 22 P.3d at 91 (emphasis added). As a result, the ICA concluded that although a defendant's contact with the police officer's hat did not fall within the conduct described in the first clause, it did fall within the conduct described in the second clause. *Id.*

### IV.

Using the word "or" in the charging instrument to charge multiple actions in the same statutory subsection, as the majority advocates, would violate due process by "[leaving] the defendant uncertain as to which of the acts charged was being relied upon as the basis for the accusation against him [or her]." *Jendrusch,* 58 Haw. at 282 n. 4, 567 P.2d at 1245 n. 4. This requirement, that the defendant be aware of what he or she is charged with, also inheres in the Hawai'i Constitution, article I, section 14, which mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be informed of the nature and cause of the accusation[.]"

As indicated in *Jendrusch,* the use of the word "or" would indicate to a lay person that he or she was charged with one of the acts described in the statute, <u>but would not indicate which one.</u> Given that "or" is most known as a disjunctive in its ordinary signification, *see* HRS § 1–14, it signals to a lay person that he or she is in jeopardy of being convicted of the first category of conduct to the exclusion of the second, or of the second category of conduct to the exclusion of the first, without being advised of what prohibited conduct he or she is actually on trial for and must defend against.

In contrast to "or", "and", or "and/or" provide the required notice to the defendant for constitutional purposes.[9] "And" is defined as "a function word to indicate connection or addition[,] esp[ecially] of items within the same class or type; used to join sentence elements of the same grammatical rank or function[,]" *Merriam Webster's Collegiate Dictionary* 43, and is commonly understood to include <u>both.</u> Thus, defendants charged with one type of conduct and another type of conduct would understand that they must be prepared to defend against both types of conduct. *See Batson,* 73 Haw. at 249–50, 831 P.2d at 932 (reiterating this court's decision in *Lemalu* "that where a statute proscribes an offense that can be committed by factually alternative types of conduct, 'the charge may be laid [out] in the conjunctive but not in the disjunctive.'" (quoting *Lemalu,* 72 Haw. at 134, 809 P.2d at 444) (brackets in original)). The same holds true for "and/or" inasmuch as it indicates to the defendant at least the possibility that the State may be charging both types of conduct, and thus a defendant would similarly prepare to defend against both types of conduct.[10] *See id.* (noting that "joinder of alternative allegations in a single count by 'and/or' is 'appropriate'" (quoting *Cabral,* 8 Haw.App. at 510, 810 P.2d at 675)).

9. Chief Judge Nakamura concurred to the ICA's SDO, stating that although the majority's result was mandated under Hawai'i case law, he disagreed with that case law because, in his view, charging in the disjunctive "or" provides fair notice the defendants. *Codiamat,* 2012 WL 3113898, at *5 (Nakamura, C.J., concurring). The State adopts this view in its Application, arguing that "any existing Hawai'i precedent that rejects pleading in the disjunctive in favor of pleading in either the conjunctive or conjunctive [and] disjunctive should be overturned because such precedent is inconsistent with the modern pleading practices already recognized here." As discussed *infra,* however, the disjunctive "or" provides less notice to defendants of the charges they must be prepared to meet.

10. As the State stated at oral argument, the usual practice is to charge non-synonymous conduct from the same subsection of a statute as "and/or."

Charging two acts in the same statutory subsection by the conjunctive "and" or by use of the conjunctive and disjunctive "and/or" has long been approved by Hawai'i case law. In *Batson*, this court held that it is sufficient "that one offense allegedly committed in two different ways be charged <u>conjunctively</u> in a single count[,]" and that under these circumstances, "the disjunctive 'or' [is] subsumed within the conjunctive 'and.'" 73 Haw. at 250–51, 831 P.2d at 932 (emphasis added). This court's conclusion in *Batson* followed from its holding in *Lemalu* and the ICA opinion in *Cabral. Lemalu* reiterated the holding from *Jendrusch's* footnote four, that "[p]hrasing a complaint in the disjunctive would not provide [ ] notice as it would leave the defendant 'uncertain as to which of the acts charged was being relied upon as the basis for the accusation against him.'" *Lemalu*, 72 Haw. at 134, 809 P.2d at 444 (quoting *Jendrusch*, 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4). In *Cabral*, the ICA held that "[i]n our view, the most appropriate method to allege one offense committed in two different ways is to allege in one count that the defendant committed the offense (a) in one way 'and/or' (b) in a second way." 8 Haw. App. at 511, 810 P.2d at 676.

## V.

In this case, the rules of statutory construction are not divorced from the constitutional mandate of fair notice, as the State suggests, but rather, complement each other. For our construction of a statute such as HRS § 711–1106 must be guided by how it is to be understood by persons of ordinary intelligence, a precept the majority opinion violates. *See Kalama*, 94 Hawai'i at 65, 8 P.3d at 1229; *State v. Aiwohi*, 109 Hawai'i 115, 136, 123 P.3d 1210, 1231 (2005) (Acoba, J., concurring). "It is how the statute would be read by the layperson which guides our construction in criminal cases." *Kalama*, 94 Hawai'i at 65, 8 P.3d at 1229 (quoting *State v. Riveira*, 92 Hawai'i 546, 561, 993 P.2d 580, 595 (App.1999)). In *State v. Sprattling*, 99 Hawai'i 312, 55 P.3d 276, this court held that in order to satisfy due process, "the [ ] charge must be worded in a manner such 'that the nature of the accusation [could] be understood by a person of common under-

standing[.]'" 99 Hawai'i at 318, 55 P.3d at 282 (quoting *State v. Israel*, 78 Hawai'i 66, 71, 890 P.2d 303, 308 (1995)) (first brackets added, other brackets in original).

This approach to plain meaning is underscored by the fact that, under the "void-for-vagueness" doctrine, *see State v. Beltran*, 116 Hawai'i 146, 151, 172 P.3d 458, 463 (2007) (citations omitted), "to comport with due process, penal statutes must inform a person of ordinary intelligence of what conduct is prohibited so that he or she may choose between lawful and unlawful conduct." *Kalama*, 94 Hawai'i at 64, 8 P.3d at 1228 (citations omitted). "The statutory mandate that the 'usual' and 'popular' reading be employed in interpreting a statute, *see* HRS § 1–14, is plainly intended to attribute to a statute a construction that would be readily understood by a layperson." *Aiwohi*, 109 Hawai'i at 136, 123 P.3d at 1231 (Acoba, J., concurring).

In accordance with these principles, this court has established that "'[b]ecause construction of a criminal statute <u>must be guided by the need for fair warning, it is rare that legislative history or statutory policies will support a construction of a statute broader than that clearly warranted by the text.'</u>" *Kalama*, 94 Hawai'i at 65, 8 P.3d at 1229 (quoting *Crandon v. United States*, 494 U.S. 152, 160, 110 S.Ct. 997, 108 L.Ed.2d 132 (1990)) (emphasis added). Consequently, canons of statutory construction, including HRS § 1–14, hold that the terms in HRS § 711–1106(1)(a) are non-synonymous, and such a reading is consistent with giving fair warning to the layperson of the full range of conduct, both involving personal bodily contact and subjecting a person to offensive contact, that could be covered under the statute. "[T]o avoid running afoul of these fundamental [constitutional] principles, we [must] give [the statute] a construction that would not ensnare conduct beyond the plain import of the statute." *Id.*

## VI.

The interpretation that the State urges this court to adopt, and the majority in fact applies, not only fails to notify the defendant

of the accusations against him or her, but has the effect of affirmatively <u>misleading</u> the defendant as to what conduct he or she must defend against, and what must be done to prepare for trial. In the instant case, for example, under this "synonymous approach," there is apparently no basis for the accusation that Codiamat "subject[ed] another person to offensive physical contact[.]" But, under this approach, adopted by the majority, a defendant would not know which act he or she is accused of, but instead would be misled by the complaint as to a charge of "subject[ing] another person to offensive physical contact[,]" when, in fact, no such charge will be prosecuted.

Under the "synonymous" construction of the statute and the complaint adopted by the State, <u>nothing at all would inform the defendant that all of the conduct set forth in the statute and charge is to be considered synonymous.</u> This construction by the State and the majority contradicts the enumeration of separate and discrete acts that a common sense and ordinary reading of the complaint would engender. A lay person reading the charge in this case would not read it as signifying a homogeneous charge of offensive touching, but instead, taking the words in their "general or popular use or meaning[,]" HRS § 1–14, would believe multiple ways of violating the offense were in issue.

The State's and the majority's approach thus violates due process, which requires that "the defendant in a criminal action should not be relegated to a position from which he [or she] must speculate as to what crime he [or she] will have to meet in defense." *Israel,* 78 Hawai'i at 71, 890 P.2d at 308. Indeed, as noted, the statute must be viewed from the perspective of a person of common understanding. *Sprattling,* 99 Hawai'i at 318, 55 P.3d at 282 (citation omitted).

## VII.

The majority holds, first, that the State's admission that "the only act being charged here is an offensive touching of another person[,]" is not problematic. Majority's opinion at 221–22 n. 3, 317 P.3d at 665–66 n. 3. Second, the majority asserts that Hawai'i courts have never enforced a strict rule

against disjunctive charging, and that the charge in this case does not violate the *Jendrusch* rule because Codiamat is charged with violating only one subsection of the statute, which "codifi[es] a single category of harassing behavior." Majority's opinion at 225–26, 317 P.3d at 669–70. Third, the majority claims that in general, "acts may be charged disjunctively when the words used charge similar or analogous forms of conduct that are codified in a single subsection of a statute[,]" a rule that the majority asserts strikes a balance between a less technical approach to charging and the protection of defendants' rights. Majority's opinion at 226–27, 317 P.3d at 670–71.

### A.

The majority argues that "the State's admission [that the only act being charged is an offensive touching of another person] must be read in the context of its continuing assertion that ... 'touch[ing Complainant] in an offensive manner' [is] factually synonymous with the words 'subject[ing Complainant] to offensive physical contact.'" Majority's opinion at 221–22 n. 3, 317 P.3d at 665–66 n. 3 (citation and internal quotation marks omitted). Respectfully, the majority simply ignores the State's clear admission that it is only charging "offensive touching" and that the other words in the charge <u>constitute surplusage.</u> Thus the majority upholds the validity of the original charge even in the face of the State's express disavowal of the second part of the charge, and the fact that that part of the charge will have no effect whatsoever on the defendant's criminal liability.

The majority defends the State's charge by positing that the State was justified in charging both forms of conduct because "the nature, or the breadth" of the act that the State was charging Codiamat with "[is] unclear[,]" even though the State itself does not make this argument. Majority's opinion at 221–22 n. 3, 317 P.3d at 665–66 n. 3. However, it is difficult to discern how the majority can advance this argument where the State has explicitly conceded that it will only prosecute Codiamat for "strik[ing], shov[ing], kick[ing] or otherwise touch[ing] [complainant] in an

offensive manner[.]" Thus, in its appeal, the State has made abundantly clear the "nature, or the breadth" of the act that it intends to prosecute. Yet, the State continues to maintain that it needed to charge both forms of conduct, connected by the word "or."

### B.

The majority's second contention is that this court has never relied upon the rule against charging in the disjunctive in reaching the holding of a case, and that the rule has not been enforced. Majority's opinion at 223–24, 225, 317 P.3d at 666–67, 668. This amounts to an argument for abolishing precedent, for we have clearly–established governing case law on the sufficiency of a charge, with respect to conjunctive and disjunctive language. Rules in our case law are set down on the assumption that they will be followed. The majority rule would, in effect, revert to pre-*Jendrusch* law, disregarding the limitations on disjunctive charging adopted by this court after *Jendrusch.*

In order to justify this revision of our law, the majority initially mentions that footnote 4 in *Jendrusch* was "dicta." Majority's opinion at 223–24, 317 P.3d at 667–68. However, this footnote was prospective in nature, rather than dicta.[11] Subsequently, as discussed, this cautionary language was expressly affirmed by this court and the ICA, and therefore the rule decidedly is not dicta. *See Batson,* 73 Haw. at 249–50, 831 P.2d at 932; *Lemalu,* 72 Haw. at 134, 809 P.2d at 444; *Cabral,* 8 Haw.App. at 510, 810 P.2d at 675.

The requirement that non-synonymous conduct not be charged in the disjunctive has been repeated numerous times in Hawai'i case law. *See* discussion *supra.*

Additionally, the majority makes much of the ICA's unpublished SDO in *State v. Freitas,* No. 28430, 2010 WL 2862051, at *4 (App. July 22, 2010). Majority's opinion at 224, 317 P.3d at 224. However, *Freitas* incorrectly interpreted the *Jendrusch* rule as applying only to conduct proscribed under different sections of the statute, *Freitas,* 2010 WL 2862051, at *3, where nothing in *Jendrusch* suggests that the rule is only applicable to conduct charged under different sections or subsections of a statute. *Jendrusch,* 58 Haw. at 283 n. 4, 567 P.2d at 1245 n. 4. *Freitas,* in effect, did not follow precedent. It is not surprising that the ICA in *McCarthy,* discussed *supra,* departed from *Freitas* and held that under *Lemalu* and *Jendrusch* the types of conduct in the harassment statute cannot be charged in the disjunctive.[12] The ICA in this case followed *McCarthy* in holding that the charge was deficient because the two forms of conduct in HRS § 711–1106(1)(a) were charged in the disjunctive. *Codiamat,* 2012 WL 3113898, at *2–3.

### C.

After maintaining that footnote 4 in *Jendrusch* is dicta, and that Hawai'i precedent does not disallow disjunctive charging, the majority goes on to set out its own interpretation of *Jendrusch* and then apparently concludes that the charge in this case satisfies

---

11. *See, e.g., Hirahara v. Tanaka,* 87 Hawai'i 460, 464, 959 P.2d 830, 835 (1998) (stating that the term "best judgment" should be avoided in future medical malpractice jury instructions); *Garringer v. State,* 80 Hawai'i 327, 335, 909 P.2d 1142, 1150 (1996) ("In order to avoid this problem in future cases, the circuit court should instruct the jury, by special verdict interrogatories, to make any and all findings relevant to the imposition of enhanced sentences where the requisite aggravating circumstances are intrinsic to the commission of the crime charged."); *State v. Lau,* 73 Haw. 259, 264, 831 P.2d 523, 526 (1992) ("In order to negate the unnecessary and time-consuming search of the record on appeal, we emphasize and reiterate our caveat ... that where sentencing alternatives are available, the sentencing court should state clearly on the record that such alternatives were considered.").

12. As noted, *McCarthy* was also an unpublished ICA opinion. The majority points out that despite its holding, the final footnote in *McCarthy* states that " '[t]he case law notwithstanding, it is not clear to us that phrasing the charge in the conjunctive provides any additional notice over the charge phrased in the disjunctive.' " Majority's opinion at 222, 317 P.3d at 666 (quoting *McCarthy,* 2010 WL 3433722, at *4 n. 4). However, it is important to note that *McCarthy* recognized that charging in the disjunctive was not permitted under Hawai'i precedent, and held accordingly. *Id.* at *4. Thus, the final footnote is merely commentary without any legal effect. Further, as explained *supra,* charging in the conjunctive or conjunctive/disjunctive does provide additional notice to the defendant over charging in the disjunctive.

that interpretation. Majority's opinion at 225–26, 317 P.3d at 669–70.

In reinterpreting *Jendrusch*, the majority contends that this court "stated only that charging [HRS § 711–1101(1) ] subsection (b) and subsection © disjunctively deprived the defendant of notice[,]" and that the opinion "expressed no concern as to charging [the different non-synonymous acts contained within subsection ©] disjunctively." *Id.* at 225, 317 P.3d at 669. This is an insupportable view of *Jendrusch*, and serves only to justify the majority's position. Clearly the rationale underlying this court's examples of the problem with charging subsections (b) and © disjunctively would similarly apply to the "several ways in which" a violation of subsection © might be effectuated. *See Jendrusch,* 58 Haw. at 282 n. 4, 567 P.2d at 1245 n. 4.

The import of *Jendrusch* is not simply that specific errors would result in charging disjunctively in HRS § 711–1101(1), but rather, that "[w]here a statute specifies several ways in which its violation may occur, the charge may be laid in the conjunctive but not in the disjunctive[,]" *id.* (emphasis added), in order to comport with due process. *Jendrusch* did not state that it applied only to subsections in a statute, as the majority now holds, but unambiguously applied to the "several ways in which a violation may occur." *Id.* (emphasis added). The guarantee that the accused must be informed of the nature and the cause of the accusations, Haw. Const. art. 1, § 14, cannot be satisfied in any other way.

In its application of *Jendrusch* to this case, the majority's interpretation reveals further flaws. In the majority's view, "whether Codiamat was charged with direct offensive touching or indirect offensive contact is relatively inconsequential." Majority's opinion at 225, 317 P.3d at 669. It is unclear how this could be an accurate statement where the defendant is unaware of which of the two forms of conduct constituted the charge against her. In failing to determine whether the two categories of conduct are analogous, the majority not only misconstrues *Jendrusch,* but also repeatedly disregards the

canons of interpretation that govern whether particular conduct in HRS § 711–1106 may be charged in the conjunctive or disjunctive.[13]

## D.

Furthermore, the "balance" that the majority asserts it strikes between "ease of administration and protection of defendants' rights," majority's opinion at 226, 317 P.3d at 670, in fact weighs heavily on the side of the so-called "ease" and against the protection of constitutional rights. In the last portion of its opinion, the majority employs two different standards. It first states that acts may be charged in the disjunctive if they are "closely related, falling within the same category of behavior" and are in the same subsection of the statute. Majority's opinion at 226, 317 P.3d at 670. Then, it states that "acts may be charged disjunctively when the words used charge similar or analogous forms of conduct that are codified in a single subsection of a statute." Majority's opinion at 225, 317 P.3d at 668.

The majority thus distinguishes between using the disjunctive to charge violations of multiple sections or subsections of a statute and using the disjunctive to charge multiple acts within the same subsection of the statute. *Id.* But, the majority articulates no reason to discriminate between acts charged under the same section or subsection of a statute from violations of sections only.

Indeed, there is no rational basis for focusing on the location in the statute where the conduct is described rather than on the conduct itself. The majority must acknowledge that the use of the disjunctive in joining charges of violations of multiple sections or subsections of a statute "may confuse the defendant as to the number of disparate acts with which he or she is charged[,]" majority's opinion at 226–27, 317 P.3d at 670–71, but the majority does not indicate why a defendant would not be confused when multiple ways of committing the offense from the same subsection are also disjunctively charged.[14]

---

**13.** As related *supra,* these include ejusdem generis, construction of the word "or" as indicating

two alternatives, and the rule against treating statutory language as surplusage.

Under the majority's holding, "[a] person of common understanding," *Sprattling*, 99 Hawai'i at 318, 55 P.3d at 282, would not understand a charge differently simply because the acts charged were originally located in one subsection or in different subsections of the criminal statute. In order to comport with due process, "the [ ] charge must be worded in a manner such that the nature and cause of the accusation could be understood by a person of common understanding." *Id.* (brackets omitted) (citation and internal quotation marks omitted).

As a result, the focus of a court's analysis must be on the <u>conduct</u> itself, and whether the conduct described would indicate to the defendant that he or she has committed the offense in multiple ways. Respectfully, there is no principled basis for discriminating between acts charged, whether they occur in different subsections or within the same subsection of a statute. Plainly, for the reasons stated *supra*, the application of such a rule in this case would violate due process. *See Israel*, 78 Hawai'i at 69, 890 P.2d at 306 (holding that the sufficiency of a charge is measured by, among other things, whether the charge "sufficiently appraises the defendant of what he or she must be prepared to meet").

Moreover, both proposed tests would spawn more litigation, rather than serve the purposes of clarity and fairness in charging procedures. Assuming that the State does charge in the disjunctive, defendants will have to decide whether the acts described "charge similar forms of conduct[,]" although exactly how "similar" or dissimilar this conduct must be is unknowable. The majority does not explain how <u>it</u> knows that the acts described "charge similar or analogous forms of conduct" other than to say that "direct offensive touching [and] indirect offensive contact . . . fall[ ] within the same category of

behavior." Majority's opinion at 225–26, 317 P.3d at 669–70.

The majority's "similarity" test "relegat[es] [the defendant] to a position from which he or she must speculate as to what crime he or she will have to meet in defense." *Sprattling*, 99 Hawai'i at 318, 55 P.3d at 276 (brackets omitted) (internal quotation marks and citation omitted). The majority provides no indication of how a defendant will be able to determine that two acts are "similar" or even what "similar" means, for purposes of disjunctive charging.

As noted *supra*, the majority's "closely related, category of behavior" test is similarly confusing. There are no parameters for what constitutes the same "category of behavior." For example, applying this language, one could assume that everything in a particular statute would constitute the same "category of behavior" because the statutes themselves are organized by category. By "closely related," the majority could mean that the acts are in the same statutory subsection, or something else. What "closely related" means in the context of a criminal statutory scheme is not comprehensible to "a person of common understanding." *Sprattling*, 99 Hawai'i at 318, 55 P.3d at 282.

Consequently, the majority's claim to a "nontechnical" approach to pleading standards results in ambiguities that will prevent an accused from being "informed of the nature and cause of the accusation" leveled against him or her, Haw. Const. art. I, § 14, and would deprive persons of liberty "without due process of law." Haw. Const. art. I, § 5.

## VIII.

Ultimately, the majority jettisons a framework carefully constructed over the years to ensure lay persons are fairly informed about a process that can be confusing, bewildering,

---

14. The majority states that it agrees in part with Chief Judge Nakamura's concurring opinion in the ICA case, that the use of the disjunctive "alerts the defendant that he or she must be prepared to defend against each of the charged alternatives." Majority's opinion at 226, 317 P.3d at 670. As noted, this ignores that the word "or" indicates to the lay defendant that he or she must prepare to defend against one of the acts, to the exclusion of the other. Further, the rationale from the ICA concurrence does not justify distinguishing between disjunctive charging of multiple subsections and disjunctive charging of multiple ways of committing an offense in the same subsection.

and frustrating for them. The majority rule strikes at cases, like the instant one, in which the public has the most contact with our courts. The result for the public is a landscape bereft of guideposts, where words do not mean what they say; where a series of acts is actually a single act; and where one must guess at what conduct he or she is accused, and for what conduct one may have been convicted. In sum, the majority's test abrogates the guarantee to the people of the right to be informed of the <u>nature and</u> the <u>cause</u> of the government's accusation. Haw. Const. art. I, § 14.